Report set aside ; costs to abide event.

---

BRILL & BRILL vs. FLAGLER.

The inhabitant of a dwelling house may lawfully kill the dog of another, where such dog is in the habit of haunting his house and by barking and howling, by day and by night, disturbs the peace and quiet of his family, if the dog cannot be otherwise prevented from annoying him ; a wanton destruction of the animal is not justifiable.

*It seems* that the owner of a dog is responsible for his chasing and worrying sheep, after he is informed of the propensity of the whelp.

The *opinions* of witnesses, as to the value of a dog for whose destruction an action is brought, are admissible in evidence.

Where a paper is offered in evidence for the purpose of impeaching a witness, it is discretionary with the court to direct it to be read, or to read it themselves, to prevent undue impressions upon the minds of the jury, should the paper be deemed inadmissible.

ERROR from the Dutchess C. P. Flagler sued the Brills in trepass for killing a dog. The defendants pleaded, 1. *Non cul.*; 2. That the dog was accustomed to come upon the close of the defendants and spoil their grass and corn, and chase, pursue and worry their sheep, &c. of which the plaintiff had notice, and because the dog, on, &c. was in the close of the defendants spoiling their grass and grain, and chasing, pursuing and worrying their sheep, &c. they killed him; 3. That the dog was accustomed to come upon the close of the defendants, in the night time as well as in the day time, and by his barking and howling, annoy and disturb the defendants and their families—all which was well known to the plaintiff, who had been frequently re-

quested to restrain the dog from coming upon the premises *of the defendants, but who, although knowing the roving and vic-  [ *355 ] ious propensities of the dog, did not restrain him as requested, but wilfully permitted him, from time to time, to come upon the premises of the defendants and annoy and disturb them and their families ; and because the dog was upon the premises of the defendants and about their dwelling house at the time, &c. annoying, incommoding and disturbing them and their families, and because the dog could not otherwise be restrained, they killed him, as it was lawful for them to do, &c. ; 4. The defendants pleaded a *fourth* plea similar to the second.  Issues of fact were joined upon the first, second and fourth pleas, and an issue of law upon the *third* plea, the plaintiff having *demurred* to that plea.  The common pleas adjudged the third plea *bad*, and the cause was then tried upon the issues of fact.  On the trial the plaintiff claimed that the dog was a *setter*, and peculiarly valuable for hunting birds ; and after giving some evidence of the good qualities of his dog as a setter, he inquired of a witness *as to the value of a good well broke setter dog*—and the *value of the services of breaking a setter dog ;* which inquiries were objected to by the defendants' counsel, but were permitted by the court to be made.  To which decision of the court the defendants' counsel excepted. The same inquiries were put to a number of witnesses, and as often as put, objected to, objection overruled, and exception taken, and all formally entered upon the bill of exceptions.  The witnesses gave their opinions as to the value of setter dogs generally, and not as to the value of the plaintiff's dog in particular.  A witness, called on the part of the defendants, was objected to by the plaintiff's counsel, as incompetent, on the ground of his conviction of a crime, and was about to read the record of conviction to the jury, to which the defendants' counsel objected, on the ground that the record was the record of conviction of the witness of the offence of petit larceny only, which did not render the witness incompetent, and ought not to be read in the hearing of the jury.  The court however directed it to be read, to inform them of its contents ; to which direction the plaintiff's counsel excepted.  The record was read, the court decided it to be inadmissible, and the witness was sworn.  After the *testimony was closed, the court  [ *356 ] charged the jury, who found a verdict for the plaintiff with $25 damages, upon which judgment was entered.  The defendants, on a bill of exceptions, sued out a writ of error.

*S. Barculo,* for the plaintiffs in error.

*H. Swift,* for the defendant in error.

*By the Court,* NELSON, Ch. J.  The bill of exceptions in this case is unnecessarily voluminous ; it contains a great deal of idle repetition, that serves only to incumber the record, and increase the labor of the court.  One ob-

jection to the testimony of a witness presenting for decision a particular point of law, is as available to the party for the purpose of review, as if the same was raised in the case of each witness examined. Substantially the same questions are here raised with tedious particularity in various stages of the trial, as if the strength of the objection depended upon the number of times it was repeated.

The opinions allowed as to the value of a well broke *setter* dog, I am inclined to think were barely competent, and the answers of the witnesses depended in a measure upon their skill and judgment in respect to these animals. The questions were put to persons supposed to be acquainted with the peculiar qualities of setter dogs, and who had some knowledge of their value in the market. The case is analogous to those in which the opinions of persons are always permitted of the value of domestic animals, such as cattle, sheep, &c. in which they are in the habit of dealing. They are supposed to be better acquainted with the general market value of such animals, than the generality of mankind. A common standard is thus fixed that may assist in arriving at the value in the particular instance, which will vary according to the quality, condition, &c. of the article in question. The proof in the case was slight as to the breed and qualities of the plaintiff's dog ; but it was enough, I think, to authorize the general enquiry. The court and jury will always make the proper application. They have obviously done so in this case ; for though the value of a well broke *setter* was put at from one to two hundred dollars, the jury found for the plaintiff only $25.

[ *357 ]     *The reading of the record offered in proof for the purpose of rendering incompetent the witness (Flagler,) was well enough ; it was a matter resting in the discretion of the court, whether to read it themselves, or hear the counsel read it for them.

I think the court were also warranted in saying to the jury, that the evidence given of the chasing and worrying of the defendant's *sheep* by the dog, was not sufficient to justify the killing. The remark that the defendants had a remedy against the owner, for the injury done by the dog to the grass or grain, provided the owner had notice of the fact, was out of the case. I am not prepared to deny the remedy for such damage, after the owner is duly advised of the habit of the dog to commit it ; on the contrary, I entertain no doubt of his responsibility for this violation of right after a knowledge of the animal's propensity, the same as for an injury to the cattle, the person or the family of an individual.

The important question in the case, however, is whether the facts set up in the third plea, constitute a bar to the action. After a full consideration, I am of opinion they do. The demurrer admits that the dog was in the constant habit of coming on the premises, and about the dwelling of the defendants, day and night, barking and howling, to the great annoyance and disturbance of the peace and quiet of the family ; that the plaintiff was ful-

ly advised of this mischievous propensity of the animal, and wilfully neg-
lected to confine him, and that defendants, unable to remove the nuisance in
any other way, killed him.   No other authority than the experience and ob-
servation of every man is necessary to enable him to determine, that the
matters set forth in this plea constitute a private nuisance to the inmates of
a family, and upon general principles justify all reasonable means to remove
it.   It would be mockery to refer a party to his remedy by action ; it is far
too dilatory and impotent for the exigency of the case.   Whatsoever unlaw-
fully annoys, or does damage to another, is a nuisance, and may be abated
by the party aggrieved, so as he commits no riot in the doing of it.   3
*Black. Comm.* 5.   At another place, *p.* 215, the learned author
defines it to be any thing done to the hurt *or annoyance of the     [ *358 ]
lands, tenements or hereditaments of another.   The erection of a
pigsty, limekiln, privy, smithforge, tobacco mill, tallow furnace and the like,
so near a dwelling house, that the stench incommodes the family, and makes
the air unwholesome, are given in the books as pertinent illustrations of the
rule whereby the injured party may take the remedy into his own hands.
*See Viner, tit. Nuisance, G. & W.*

In the case of *Street* v. *Ingwell, Selw. N. P.* 851, an action was brought
for keeping dogs so near the plaintiff's dwelling house, that his family were
prevented from sleeping during the night, and were much disturbed in the
daytime.   There was a verdict for the defendant.   On motion for a new
trial, Lord Kenyon observed, that he knew it was very disagreeable to have
such neighbours, and that cases of the kind had been made the subject of in-
vestigation in courts of justice.   He refused a new trial, but intimated that
if the nuisance was continued, a new action might be brought.   He referred
to a case in *Peere Williams, 2d vol. p.* 268, where the plaintiff's house be-
ing so near the church, that the five o'clock morning bell disturbed her, she
made an agreement with the church wardens to erect a cupola and clock, in
consideration of which the five o'clock bell should not be rung.   This was
deemed a good agreement, and the chancellor granted an injunction to stay
the ringing of the bell.   It is worthy of remark, that all of the instances to
which I have referred, and in respect to which the general principle of law
is laid down, are cases of erections or acts of themselves lawful, that is,
made or done upon the party's *own premises.*   Even there, he must enjoy
his property in such a manner as not to injure that of another person.   *Sic
utere tuo, ut non lœdas alienum.*   How much more liberally should we in-
dulge the application of the rule, the exercise of this summary remedy,
where the nuisance is found upon the premises of the *party aggrieved?*   In
the case before Lord Kenyon, if the seven pointers had been suffered to re-
main within the plaintiff's enclosures, it is not to be doubted but that he
would have instantly granted a new trial, or that the nuisance might have
been abated by the destruction of the animals if necessary.

[ *359 ]          *Even in England, where the owners of these animals are in some respects peculiarly privileged, both by the common and statute law, a party is frequently justified in destroying the dogs. It has been held that a man may kill a dog to prevent mischief to his beast, even when the dog is in the act of chasing it from his master's enclosure. 6 *Bacon*, 576. So, also, to prevent dangers to himself. *Id.* The keeper also may kill a dog found in a warren, *Cro. Jac.* 45, or chasing deer in a park, though he might have been taken alive. 3 *Lev.* 28.

In the case of *Putnam* v. *Payne*, 13 *Johns. R.* 312, it was decided, that any person is justified in killing a ferocious and dangerous dog which is permitted to run at large by the owner, or escapes through negligence, he having notice of his vicious disposition. *See* 9 *Johns. R.*, 233.

The case of *Wright* v. *Ramscot*, 1 *Saund.* 84, was trespass for killing a dog. The defendant pleaded that the mastiff ran violently upon a dog of one E. B., and did then and there bite said dog, and that he as his servant killed the mastiff that he might do no further mischief. The plaintiff demurred, and it was conceded by *Saunders*, on the argument, that if the plea had stated that the mastiff could not have been otherwise taken off, it might have justified the killing. The plea under consideration seems to have been drawn with an eye to this case—and if the peace and repose of a man's family is to be regarded in the law as dear to him as the life of a common, though I admit often useful domestic animal, the authority is direct in support of it. The fact is expressly averred, that the dog could not be restrained or prevented from haunting the dwelling house, and disturbing the family, by an incessant barking and howling night and day, by a resort to means less severe than taking his life. This, I admit, is a very material averment, and the party should be held to strict proof. A needless or wanton destruction of the animal, even to prevent an acknowledged mischief, would be unjustifiable. Regarding, however, as I do, the facts stated in the plea as presenting a case of serious and intolerable nuisance, of
[ *360 ]          which the owner of the animal occasioning it was fully *advised, but wilfully neglected to interfere ; if no other reasonable means could effectually remove it short of destruction, I cannot doubt but those used were fully justified upon established principles of the common law. The act was essential to the free and perfect enjoyment by the defendants of their property, as well as to the protection and comfort of their families.

Cowen, J. concurred.

Bronson, J. I agree that the judgment should be reversed, because the plea was a good bar to the action, and also because improper evidence was given on the question of damages.

Judgment reversed, and judgment for plaintiffs in error on demurrer.