## Dunlap vs. Snyder.

In an action to recover damages for killing a dog, the opinions of witnesses, as to his value, are not admissible in evidence.

*Brill* v. *Flagler*, (23 *Wend*. 354,) deciding the contrary, overruled.

The jury are the judges of the value of such property, after hearing the evidence as to the particular qualities and properties of the animal.

If in such an action, testimony as to the good qualities and character of the dog is admitted, the defendant may rebut such testimony by proof that the animal had been in the habit of attacking and worrying and killing sheep.

Proof of the worthlessness of the animal is proper, in mitigation of damages, although that defense was not set up in the answer.

THIS was an appeal from a judgment of the Montgomery county court. The action was for killing a dog. The defense was first, a denial, secondly that the killing was done in defense of the defendant's person from an attack of the dog; that he was dangerous and mischievous and accustomed to bite mankind, which the plaintiff well knew, and did not kill him; that he attacked the defendant in the night, and was a nuisance, and as such liable to be killed. On the trial before the justice the plaintiff proved the killing of the dog, in the night time. The witness testified to certain good qualities of the dog, and said he knew the value of a good farm dog. On being asked what in his opinion was the value of the dog in question, the question was objected to, on the ground that it was not shown that the witness was acquainted with the value or price of dogs, or had ever dealt in the article. The objection was overruled, and the witness answered that he thought him worth $25. To prove that the defendant shot the dog, a witness was called, and testified that 6 or 8 weeks before, he was in company with the defendant in the road, and heard a dog bark. The witness remarked, "There is Dunlap's (the plaintiff's) dog barking in the road." The defendant said, "By G— I will kill him." The witness added, without being inquired of, that a day or two after that, the defendant said he did not deny but that he killed the dog. On being cross-examined, the witness was asked what else the defendant said, when he remarked that he did not deny that he killed the dog. This was objected to, on the ground that the

plaintiff had not called out this conversation. The objection was overruled, and the witness testified that the defendant further said, at the time, that he killed the dog because he attacked him, and the witness testified that he asked the defendant after the dog was shot, who killed him, and he answered " I did." This witness was not on friendly terms with the defendant, and three or four others who were in the same room with him testified that they heard no such conversation. Other witnesses were called and asked their opinion as to the value of the dog, which was also objected to but admitted by the court. A witness for the defendant testified that the dog bit him the previous spring, in the plaintiff's door-yard, in the day time ; that he told the plaintiff of it, a day or two afterwards ; that the dog attacked him once before that, in the highway, in the night ; that he had a broad axe and threw it at the dog, and he went off. The witness had before thrown stones at the dog, and had seen the defendant stone him. Another witness for the defendant swore that, about a fortnight before the dog was killed, he ran out into the road near the plaintiff's house and seized the witness by the arm ; he halloed at him and the dog let him loose. Another witness testified that on another occasion, near the plaintiff's house, the dog run out growling and barking at the witness and a person in company with him, but did not seize hold of either of them. The defendant's father also proved a violent attack of the dog on him, on a certain occasion, and to avoid him he passed over a fence. The dog did not bite him. It was proved that the night the dog was killed the defendant came to Mr. Miller's tavern and asked Miller if he had a gun ; that he there got one which was loaded, and started towards the plaintiff's, who lived between Miller's and the defendant's. The defendant offered to show that he said, when he got the gun, that the dog was in the habit of attacking him when he passed the plaintiff's, and that he wanted the gun to shoot him, if he attacked him again. This was objected to by the plaintiff and overruled. The defendant offered to prove that the dog attacked and worried sheep, at different times, and that he had killed sheep. This was objected to as irrelevant and improper, and was overruled.

Several witnesses were called by the plaintiff, who offered to prove by them the general character and disposition of the dog, as to quietness or ferociousness. This evidence was objected to by the defendant as immaterial and as calling for the opinion of witnesses, and as not tending to rebut the evidence of the defendant. The objection was overruled, and the witnesses testified that they never knew any thing but quietness in the dog. Some of them lived neighbors to the plaintiff, and had frequently seen the dog stand at the open gate, very quietly, and others testified to his quietness in other places. Others heard nothing said against him till after he was dead. The testimony being closed, the cause was submitted to the jury, who found a verdict for the plaintiff for $8 damages, for which, with costs, the justice rendered judgment. The county court of Montgomery county affirmed the judgment, and the defendant appealed.

*James E. Dewey*, for the appellant.

*Mitchell & Ely*, for the respondent.

C. L. ALLEN, J. The first objection raised by the defendant in this case is, that the justice improperly permitted witnesses to swear to their opinions as to the value of the dog. The decisions of the courts in this state are somewhat conflicting as to the rule in relation to the opinions of witnesses. In *Brill* v. *Flagler*, (23 *Wend.* 356,) a majority of the court were of opinion that evidence as to the value of a well broke setter dog was *barely* competent, and that the answers of the witnesses depended in a measure upon their skill and judgment in respect to those animals. Bronson, justice, dissented from this opinion, and the court remarked, in *Harger* v. *Edmonds*, (4 *Barb.* 256, 259,) that the case of *Brill* v. *Flagler* went too far when it professed to sanction the competency of evidence as to the value of a setter dog. In *Morehouse* v. *Mathews*, (2 *Comst.* 514, 517,) Shankland, J. observed, in relation to the same case, that the supreme court thought the evidence barely competent to allow a witness

who was acquainted with such animals and their value to testify to it.   The court do not say that this decision was proper, and the inference rather is, as from the case in 4th Barbour, that the jury are the competent judges of the value of such property, after hearing the evidence as to the particular qualities and properties of the animal.   There is no standard market value for such property, if property it can be called, and men differ in opinion as their fancies dictate, in respect to value.   The testimony of one of the witnesses shows this when he swears that he has seen dogs sold for $50.   I think the justice erred in admitting the testimony.   But suppose the testimony was proper, upon what was it based?   Clearly upon the statement of the witnesses as to the good qualities of the dog, as detailed by them in their evidence.   The defendant then offered to show that the dog had been in the habit of attacking, and worrying and killing sheep. This evidence was objected to, and overruled by the justice, while he at the same time admitted evidence of his good qualities and character.   He erred, undoubtedly, in admitting this evidence; but if it could under any circumstances be deemed proper, I cannot perceive any good reason for rejecting the evidence offered by the defendant to rebut it.   It was argued that it was irrelevant and improper as a defense, for it was no justification, unless the dog was killed while chasing and worrying sheep, which was not the offer.   Let this be granted—and perhaps under the 15th sec. 1 R. S. 705 it is so—although I do not concede the proposition, yet the testimony was, in my judgment, competent in mitigation of damages.   It is said it was not proper for this purpose, because it was not set up in the answer, and was a surprise upon the plaintiff.   It was not necessary to set up in the answer matter going to prove the worthlessness of the animal.   The plaintiff could not well be taken by surprise.   He came into court prepared to prove, as he did, the good qualities and value of his dog.   He was allowed to go further, under an objection which ought to have been sustained, and prove his general good character.   The evidence offered was rebutting evidence, and went to disprove that character and the value as established by the

Dunlap *v.* Snyder.

plaintiff. The objection was a general one, and was sustained. If the evidence, therefore, was proper at all, it should have been admitted under this general objection. It is objected that the offer should have been followed up with proof of the dog's value. The evidence itself, if received, would have shown him entirely valueless; for it is not to be presumed that a court or jury would have found a dog of any value, who had been accustomed to worry and kill sheep. Such a dog is a *nuisance.* Any person may kill him, while engaged in the act, and his master is required to kill him, after notice of the fact. I think the justice clearly erred in excluding this evidence. I think, too, the defense that the dog was accustomed to attack and bite mankind, was clearly established by several witnesses. For these reasons it is unnecessary to consider the other points presented.

The judgments of the county court and of the justice must be reversed.

HAND, P. J. I think the judgments in the courts below must be reversed. I have some doubt whether it is competent for any witness to give an opinion as to the value of a dog. If that can be done, I think it must first appear that the animal belongs to a species (if there are such) that have a market value; and the witness must have some acquaintance with the qualities of that class; and also, have some knowledge of their value. Possibly dogs may become merchandise, as well as monkeys and parrots. (*Grymes* v. *Shack, Cro. Jac.* 262.) And no doubt, an action by the owner will lie for an injury to them, and indeed it seems it will for an injury to any reclaimed animal. (*Wright* v. *Ramscott,* 1 *Saund. R.* 84, *and see note b. Ward* v. *People,* 3 *Hill,* 395. *Goff* v. *Kilts,* 15 *Wendell,* 550. 2 *Kent,* 348.) A dog may be highly valued by the owner for various reasons that would have no influence with others, and often without reference to the actual usefulness of the animal, or to any profit desired from him. Most of them are probably not profitable in a pecuniary view, and have really very little pecuniary value; and it is the safer rule to obtain the facts

from witnesses, and leave the question of value and damages to the jury. (*See Brill* v. *Flagler*, 23 *Wend.* 356.)

The plaintiff was also allowed to inquire of some of his witnesses, and they to give their opinions of the character of the dog—as, " what is the general character of the dog as to quietude," &c. Here, too, if the inquiry could be material, the jury should have passed upon the supposed amicable temper and quietude of the dog, upon the evidence of facts.

Again, if the testimony upon the general character of the dog was admissible, the defendant had a right to impeach it on the question of value, by showing that he was a sheep killer. As a general rule, witnesses, and parties too, are not supposed to be prepared to meet specific charges of crime not directly in issue ; but suppose the rule could be applicable to the canine race, at least on the question of value, any vicious habit or practices of the animal must necessarily affect that value ; and should be proved by showing the facts.

The justice unquestionably erred in the admission of evidence ; and that ground is sufficient to reverse his judgment and that of the county court. But I think the testimony showed that the defendant was justified in killing the dog. He insists that he was attacked on the same evening. However that may be, four witnesses testified to six attacks upon persons in the road, two of which were upon the defendant ; and all of them violent, and apparently very dangerous. The plaintiff did not contradict or impeach this evidence, except by the general character of the dog, which could weigh nothing against the facts ; for if it be once shown that a dog is so ferocious that he will, of his own disposition, bite mankind in the street, and is at large, he is a nuisance, and may be killed by any one. (*Maxwell* v. *Palmerton*, 21 *Wend.* 407. *Putnam* v. *Payne*, 13 *John.* 312. *Hinckley* v. *Emerson*, 4 *Cow.* 352. *Loomis* v. *Terry*, 17 *Wend.* 500. *McKone* v. *Wood*, 5 *C. & P.* 1. *Wadhurst* v. *Damme*, *Cro. Jac.* 45. *Barrington* v. *Turner*, 3 *Lev.* 28.) After the dangerous propensity is evinced, by clear proof that he has bitten a person or attempted to do so, juries should not speculate upon

. probabilities. Dogs should not be allowed to annoy citizens in the highway, and much less endanger the life or person of a human being.

Both judgments should be reversed.

CADY, J., and JAMES, J., concurred.

Judgments reversed.

[SARATOGA GENERAL TERM, May 1, 1854. *Hand, Cady, C. L. Allen* and *James,* Justices.]