## NOAH NORRIS *v.* JOHN LA FARGE.

Where an owner, being about to build a house, enters into a contract with a mechanic or manufacturer, to furnish the window caps, and the latter agrees to do so, of a "good quality for the place" in which they are to be set, but it appears, after the building is erected, that the caps, or a portion thereof, are imperfect and unskillfully made; the owner is not precluded by the mere fact that the caps are set in the walls, from claiming, in an action brought against him for the labor and materials, a suitable deduction on account of their imperfections.

Setting the caps is not necessarily an acceptance of the work as a full performance of the agreement.

The maxim, *caveat emptor*, applicable to sales of goods, does not apply to such a case.

THIS was an appeal by the defendant, from a judgment for $500, rendered against him in the Marine Court, upon the verdict of a jury. The nature of the action, and the facts elicited on the trial, are fully presented in the opinion of this court.

*John C. Dimmick*, for the defendant.

*Abiathar B. Millard*, for the plaintiff.

BY THE COURT. WOODRUFF, J.—It appears by the return, that the defendant was the owner of, and had commenced, or was about to commence, the erection of a hotel, and that the assignor of the plaintiff was a manufacturer of ornaments, window caps, etc., of terra cotta; that the said assignor, after an examination of the plans for the building, proposed to the architect to manufacture terra cotta window caps for the building for a price specified, and according to his own evidence, agreed that " the work " should be " good work for the place— good work of the kind." This statement is confirmed by the architect, and they alone of the witnesses state anything about the terms of the agreement.

Under this agreement, the assignor of the plaintiff proceeded to manufacture and furnish the window caps, and they were inserted in the walls as the building progressed. By whom they were set in the building does not appear by the evidence. The claim of the plaintiff in this suit being simply for " work, labor, and services," it is left in doubt whether the setting the window caps is included in the services claimed and contracted for or not. Very soon after the walls were erected, a portion of the window caps, estimated by one of the witnesses at one third of the whole number, became, from time to time, some sooner and others later, cracked and split by the action of the elements or the effect of cold, owing to an imperfection in the

Norris *v.* La Farge.

manufacture.  And this action being brought to recover the amount remaining unpaid, the defendant resists the payment on the ground that the work and materials did not conform to the contract, and he having already paid eight hundred dollars on account, he claims to recoup the damages he has sustained by reason of the alleged imperfections.

The jury in the court below found for the plaintiff the full contract price, although there was neither doubt nor dispute regarding the fact that the caps were of little or no value by reason of imperfection in the manufacture thereof.

The grounds urged for reversal arise out of the refusal of the judge to charge the jury as requested by the defendant's counsel, and also alleged errors of law in the charge he did give to the jury.

The defendant requested the judge to charge, " that if they believed the articles furnished were not as good as the contract called for, the defendant was entitled to a deduction for the deficiency in the value of the articles so furnished."  To this request the judge declined to accede, and charged the jury " that the transaction amounted to a sale and delivery of goods. That there was neither an express nor implied warranty that the work was such as was agreed, and that the maxim *caveat emptor* applied to the purchaser ;" and in another portion of the charge, " that if the jury believed that the defendant had an opportunity to examine the work, and ascertain its quality before he accepted or used it, the plaintiff was entitled to recover the full contract price."  He added some further explanation of the meaning of the maxim *caveat emptor* and its application to a sale of goods, and having stated that in this case there was neither an express nor implied warranty, concludes by saying, " there must be either an express warranty or fraud to make the vendor responsible for the quality or goodness of the article sold."

I think that there was in this a misapprehension of the true nature of the plaintiff's contract.  His undertaking was expressly to make and furnish " good work for the place " for which they were designed.  The contract was executory.  The

plaintiff himself, in his complaint, represents it as a contract for " work, labor, and services," and nothing else, and the express contract was that the labor and services should be so employed as to produce work of a good quality and good for the purpose for which it was designed.

Such a contract differs widely from a sale of chattels, and the undertaking being express, there is no occasion to advert to the inquiry when or under what circumstances, if at all, any warranty is implied on such a sale.

That where goods are sold without warranty and without fraud, the purchaser takes the risk of all defects in their quality is undoubtedly now well settled in this state, and if there be any exceptions, they are very few, and that there are any is not free from doubt. Sales by sample and sales of provisions for domestic use have in some cases been regarded as exceptions, but the first named supposed exception rests rather upon the ground that where a sale by sample involves any warranty, it is when, and only when, the purchase is made under an assurance that the bulk corresponds with the sample, or upon a condition that the bulk shall correspond therewith, in which case the warranty is more properly regarded as express than implied, for it is also settled that a mere sale by sample imports only that the sample is fairly taken from the bulk, *i. e.* in effect, that there is no fraud in the exhibition (as a sample) of a parcel not truly taken from the bulk offered for sale. And as to sales of provisions, the doctrine that a warranty is implied, is reduced to very narrow limits, and its soundness much questioned.

Another class of cases exists, where the goods sold are in such a situation that they cannot be examined, in respect to which, also, cases are found in which the seller has been held to an implied warranty that the goods are of the description and quality represented, either by the sample exhibited or the terms employed in describing the subject of sale.

But I apprehend the true rule in these cases is, that an intent to warrant the description or quality must appear by the representation of the seller, *i. e.* he must be held bound to deliver just such an article as he professes to sell, and as he

represents he has for disposal; and his contract in such case is rather to be regarded as an executory agreement to deliver the thing which he describes, than a warranty of the quality of goods sold.

The recent very full discussion of the law relating to sales of goods, and under what circumstances the vendor is held liable for defects therein, to be found in *Hargous* v. *Stone*, 1 Selden, 73, renders it wholly unnecessary to discuss in detail the various decisions made in this state respecting express and implied warranties upon sales of goods. The charge to the jury in this present case appears to have been in part expressed in the very words used in the opinion in that case in defining the general common law rule respecting sales of goods.

The case above referred to (1 Selden, 73), as also *Moses* v. *Mead*, 1 Denio, 378; *Wright* v. *Hart*, 18 Wend. 449, and *S. C.* 17 Wend. 267; and *Waring* v. *Mason*, 425, show that, whatever may have been the departures from the rule in England and elsewhere, in this state, upon an executed contract for the sale of goods, the purchaser takes the risk of quality unless there is fraud or express warranty on the part of the seller.

But these cases recognize a different rule in regard to executory contracts of sale, and in the opinion from which the charge herein was in part taken, it is said that to such contracts the doctrine of implied warranty has properly no application, and that such contracts carry with them an obligation that the article to be delivered shall be at least of medium quality or goodness, when the article is not in this respect defined at the time; and unless it be of such quality, it is not the thing that was agreed for. So it is in effect said in *Waring* v. *Mason*, where the article is purchased from the manufacturer, his undertaking imports what is implied in the employment of a mechanic, viz., that the article shall be made in a skillful and workmanlike manner. And in *Howard* v. *Hoey*, 23 Wend. 350, the doctrine that in executory sales the maxim *caveat venditor* applies, and not *caveat emptor*, and that even where the quality is not specified in the contract by express definition,

the seller's undertaking imports, at least, that the article to be manufactured, produced, or furnished, shall not have any remarkable defect.

I have adverted to this distinction, and to the cases above referred to, not for the purpose of discussing principles which are in my judgment abundantly settled, but to show that in the case before us, the transaction, if it may be likened to a sale of goods, was executory, and that the seller's agreement was rather, in the language of Senator Tracy, that of a mechanic who, when he accepts employment, undertakes that his work shall be done in a skillful and workmanlike manner. And that it was calculated to mislead the jury to say to them of an executory contract to make and furnish goods—even if the quality had not been defined in the agreement—that there must be either fraud or express warranty to make the vendor answerable for the quality or goodness of the article sold.

But this error was still greater in the present case, because the undertaking here was express both as to the quality and the fitness of the articles to be manufactured, for the purpose for which it was known to the manufacturer they were designed, and for which he expressly proposed to provide them. There is, therefore, here no occasion to imply either a warranty or any other agreement. He promised that the articles should be good and good for the place. It was not denied that the agreement in this respect was broken. A portion of the articles were bad and unfit for the purpose, and this was owing to a defect in the process of manufacture, and to this there was no contradiction on the trial. The assignor of the plaintiff (the contractor) fully admitted this by his actual removal and replacement of some of the defective window caps, by introducing others after the walls were built, and by offering to remove and replace more if permitted.

I apprehend, however, that the plaintiff's position is to be regarded rather as that of a mechanic employed to render work, labor, and services, than that of a vendor of goods. He has placed himself upon that distinct ground in his complaint, and his assignor so treated the contract at the time it was in

Norris *v.* La Farge.

progress of performance. He was obviously conscious that it was his duty to produce by his work, labor, and skill, articles such as the agreement called for, and the thought that when he had produced a specified number, and they were set in the walls, his responsibility ceased, did not occur to him. This he did not regard as a performance of his express contract, and accordingly when the defects were exhibited in the splitting or scaling off of the caps, he commenced the work of removing, and replacing them with others. And in this he was clearly right. He had not performed his agreement, the work was not such as he had contracted to supply, and therefore the defendant was not bound to accept and pay the contract price therefor.

It follows then that unless the acts of the defendant in respect to the services or the articles produced thereby have been such that he is precluded from objecting to the manner of performance, the request of the defendant's counsel was correct, and he was entitled to have the jury so instructed, viz. that if the articles were not as good as the contract called for, the defendant was entitled to a deduction for the deficiency in their value.

Indeed, as there was no contradiction in regard to the imperfection of the work, I think he might (unless the defendant was precluded as above suggested) have required an unqualified instruction that the defendant was entitled to such deduction.

But it is claimed that the defendant was bound to inspect the articles, and reject and return them without permitting them to be built into the walls; and not having done so, he is not at liberty to object to their quality or refuse to pay the full contract price.

In this particular the court below treated the subject as a mere sale of chattels, and yet it is settled that on a sale of goods where the warranty is express it is not necessary to return the goods unless the purchaser wishes to rescind the contract, and of course no inspection or scrutiny is necessary; the buyer may trust to the warranty, and may recover thereon the difference in value, or abate it from the price when sued

therefor and yet retain the goods. When the sale is executory, it is said that if the goods on examination are found to be unsound or not to answer the contract, the purchaser must immediately return them or give the vendor notice, and thereby rescind the contract. But this duty is modified by circumstances, and is not unqualifiedly settled. Thus in *King* v. *Paddock*, 18 Johns. R. 141, when the defendant agreed to deliver goods of a particular description, but delivered articles not conforming to the contract and then sued for the price, Spencer, Ch. J. says, " We know of no case in which an omission to return the article agreed to be sold precludes the purchaser from contesting the price excepting the cases of conditional sales." There the defendant was held entitled to a deduction proportioned to the diminished value from the price originally agreed upon. This seems to me the rule of justice as well as convenience. If the purchaser would rescind the contract and recover back what he has paid, or if he have paid nothing, would avoid paying anything, he must return the article, and this I apprehend is the true extent of the rule. And in *Howard* v. *Hoey*, 23 Wend. 353, the goods had been sent to New Orleans, for which market they were intended, and the court says that the defendants were not bound to return the goods, and the plaintiffs having sued were held only entitled to the value. The court in that case advert to the fact that the plaintiffs were notified of the defects, and intimate that it was their duty to send for the goods, or if they did not they could recover at most only what they were reasonably worth.

That in a case like the one now before us the plaintiff was not bound to employ an expert (by whom alone, if at all, the defects in the plaintiff's work could be detected before the setting thereof in the walls), and watch each piece as it was produced in the progress of the building, and at his peril reject it or accept it in full performance of the contract, seems to me quite obvious. The imposition of such a duty is too unreasonable to admit of doubt. He had, I think, a right to rely upon the express undertaking of the mechanic to furnish the window caps for the building, and such as were good for the purpose

Norris *v.* La Farge.

in view; and the same right that he had to rely upon his contract with his mason or carpenter, that they would furnish and use proper materials, and perform their work in a workmanlike manner; and it is not doubtful that in respect to them he is not bound to stand by in person or by his expert, and scrutinize the stones or bricks laid from day to day, and accept or reject them at his peril.

If the doctrine contended for is law, the injured party might oftentimes be the greatest sufferer without any means of redress. If one agrees to make and send to California an article of a specified quality, and adapted to a particular purpose, and he sends one which can be made in a very imperfect manner to serve the purposes in view, and is of an inferior quality, can it be claimed that the other party is bound to refuse it altogether, and delay the accomplishment of his design until orders can be sent back and other articles may be made and sent to him? I think he may receive the imperfect article, and claim an allowance for the defect; and so where, though the goods are not sent to a distance, if a similar injurious delay would result from a rejection of the thing offered.

At all events, the circumstances are to be considered, and the question of acceptance as performance of the executory contract in a case like the present is not necessarily determined by the mere fact that the window caps were set in the walls. On that very subject the acts of the plaintiff's assignor show that there was no acceptance of his work as a performance of his contract. Neither party so understood it. He undertook to remedy the defects in some instances, and offered to do it in others. Whatever may be the general rule applicable to sales of goods, here it was a question, if any, whether the defendant had accepted his work as performance of his contract? and all the evidence seems to me to show conclusively not only that he had not, but that no such idea occurred to either party.

It only remains to consider whether the defendant was bound to permit the plaintiff's assignor to remove the work from the walls? If this endangered the safety of the building, or would injure it, he clearly was not. And if that question became

material it should have been submitted to the jury. But I apprehend he was under no obligation whether the caps could or could not be removed and replaced. The contractor had broken his contract. The walls were erected. The contractor could, in the first instance, claim only a reasonable time within which to perform his work; and in reference to work of this description the fair construction of his agreement was, that he should have his work in readiness as the walls were built. No latitude of indulgence made it the duty of the defendant to suffer him, after the building was erected, to go over his work a second time.

I think the defendant, under the uncontradicted facts proved, was entitled to an abatement from the contract price, and that the questions of fact were submitted to the jury under instructions which, in their application to this case, were erroneous; and that, therefore, the judgment should be reversed.

Judgment reversed.