## CEIF WOOLF *vs.* WILLIAM CHALKER.

Although the common law recognizes property in the dog, it has always been esteemed a *base* property, and entitled to less consideration and protection than property in other domestic animals.

Any person may kill a *mad* dog, or one that is justly *suspected* of being mad, or that is known to have been bitten by a dog which was mad.

If a dog becomes mischievous, and inclined to injure *property*, his owner is bound to restrain him *on the first notice;* and is liable for any injury he may thereafter commit to property of *any kind*.

Although a dog, by entering alone on the land of another and doing mischief, cannot subject his owner to an action *quare clausum fregit*, as cattle and other animals which are inclined to rove and prey upon crops may do, yet, if the owner trespass, and his dog attend him and do mischief unbidden, that action will lie for the injury.

Whether before mischievous or not, or his owner know it or not, if found *at large*, doing or attempting to do *mischief*, or it is absolutely necessary for the preservation of property, he may be killed.

A dog which haunts the premises of another, and by barking and howling becomes a nuisance, if he can not otherwise be prevented, may be killed.

Whether dogs kept on the premises of the owner, may become a nuisance to adjoining proprietors by their *noise*:   Quere. (*Street* v. *Tugwell*, 2 Selw. N. P., 1047, commented on and doubted.)

A *ferocious* dog, accustomed to bite mankind, is a *common nuisance*, and if found at large may be destroyed by any one. If sued for the killing of such a dog, the defendant need not aver or prove a *scienter*.

The *keeping* of such a dog is *wrongful*, and prima facie the owner is liable to any

Woolf *v*. Chalker.

person injured, and the plaintiff may recover without averring *negligence* in *securing* or *taking care* of him; nor is negligence of the plaintiff a defence.

Whether the *willful misconduct* of the plaintiff can be set up as a defence in case of injury committed by such a dog: *Quere*.

The owner of such a dog is liable if he bite a person in consequence of being *accidentally* trodden upon, or because *irritated* by a *child*, or if he attack or injure a *trespasser*.

Such a dog is a *dangerous instrument* for protection, and placing him for that purpose can only be justified in cases where the placing of concealed instruments may be justified to prevent a felony. Nor can such use of him by the owner under his personal direction be justified, where a like degree of injury may not be inflicted lawfully by a different instrument.

The statute which enacts that "whenever any dog shall do damage, either to the body or property of any person, the owner, &c., shall pay such damage, to be recovered in an action of trespass,"—imposes an obligation on the owner, &c., of *every* dog, to pay for *any* and *all damage* it may do of its own volition, and when the owner does not personally direct him to do it, so as to be liable for a personal trespass, unless the injury be done to a *criminal* wrong doer, in protection of his master's premises or property, and be such an injury as the owner might lawfully direct him to do if present.

In an action brought on that statute, the character of the dog, the *scienter* of the defendant, and the negligence of the plaintiff, are not material, except upon the question of damages.

Where a special finding of the facts in an action at law is placed upon file by order of the court as a part of the record, it is very questionable whether it can be regarded as strictly a part of the record.

This court will not review a decision of the superior court, where the whole case is spread by the court upon a finding of the facts, and it does not appear what particular rulings of the court upon points of law were made or were excepted to.

TRESPASS, for an injury done to the person of the plaintiff by a dog of the defendant, brought upon the statute (Rev. Stat., tit. 1, sec. 282,) which provides, that " whenever any dog shall do any damage, either to the body or property of any person, the owner or keeper, &c., shall pay such damage, to be recovered in an action of trespass."

Upon the trial in the superior court, before *Park*, *J.*, on the general issue closed to the court, the following facts were specially found by the court, and the finding ordered to be made a part of the record in the case.

On the 14th of February, 1860, the plaintiff, being a traveling peddler, called at the residence of the defendant, in the town of Old Saybrook, for the purpose of ascertaining whether

the defendant or his family would purchase any of his merchandise. He was well acquainted in that neighborhood, having been in the habit for several years preceding of calling at the residences of the people, and on many occasions had called at the house of the defendant, and traded with the defendant and the members of his family. On the day mentioned he knocked at the outer door for admission, and supposing that the inmates gave him permission to enter, he opened the door and passed through an entry or passage way into the sitting-room of the house, where he had met the defendant and members of his family before, and where, at this time, were the wife of the defendant and his daughter. As soon as he had entered the room he was attacked by a large and ferocious dog belonging to the defendant, and severely bitten in the leg; which is the injury complained of in the declaration. The dog had been owned and kept by the defendant for more than a year at this time, and was of a bad disposition, and had attacked several persons in the street while passing the house, but had been prevented from inflicting injury upon them by the use of weapons; all which the defendant well knew. The court found that the character and disposition of the dog rendered him an improper instrument to be used for the protection of the defendant's dwelling-house during the day, when the defendant or his family were there, from those who might be guilty of a technical trespass in entering the house, unbidden by the inmates. The inmates of the house did not give the plaintiff permission to enter, but the plaintiff, before he entered, supposed they had. The plaintiff was guilty of no fault in entering the house, or while in the house, except in entering unbidden as aforesaid.

On these facts the court rendered judgment for the plaintiff. The defendant filed a motion in error, and brought the record before this court for revision, assigning no other error than that on the facts found the court should have rendered judgment for the defendant.

When the case came up in this court, upon the record being read, one of the judges suggested that no question was presented by the record which the court could consider. This

---

Woolf v. Chalker.

---

led to a discussion of the matter by the opposing counsel, and to a consideration of it by the court, after which the views of the court upon it were presented to the following effect, by

HINMAN, C. J. " It is very questionable whether the finding of the facts in this case can be regarded as strictly any part of the record. In decrees in equity the court is required by statute to find the facts, so that the finding there becomes necessarily a part of the record. There is no such provision as to actions at law, either requiring or authorizing the judge to find the facts as a part of the record. We have entertained cases brought up in this way, but it has generally been because no objection was made, or our attention was not called to the matter at the time. Where a case is carried up in this mode, the party carrying it up is able to raise every possible question that the facts will admit of, whether raised in the court below or not. It becomes a mere reservation of the whole case for this court. This can not be allowed. It would be productive of great inconvenience.

" There is however another objection decisive of the question here. If this finding of facts were to be regarded as a bill of exceptions, yet it presents no distinct question of law. It points out no ruling of the court to which exception was taken. It brings up the whole case. This is never allowed even in the case of a bill of exceptions. If a special finding is made and the case brought up upon it, it should at least show what points were made and exceptions taken in the court below ; for we can entertain no other questions here. It does not appear from this finding what rulings were made by the judge, or what points of law he decided ; no evidence seems to have been objected to, nothing which shows that there was a mis-trial of the case.

" It may be said that where a case is tried before the judge, as he has no charge to give as in the case of a jury trial, there is no mode by which the principles of law which he lays down for himself in deciding the case can be brought out and stated, so that exception can be taken to them. But it is very easy for the judge to state in his finding what principles of law he decides in deciding the case, and if a case is to be carried up

Woolf *v.* Chalker.

on such findings of fact, we must at least require that the principles decided must be distinctly stated.

" As however the counsel for the defendant here may have failed to get such a finding in this respect from a misapprehension of the rule on the subject, and as our practice has not been so strict as it ought to have been, we will allow the case to be postponed, that the counsel may get a new finding by the judge, or a motion for a new trial."

The case was postponed, and the counsel afterwards agreed to a substitution of a motion for a new trial in the place of the motion in error, which was allowed by Judge Park, and which was substantially the former finding with the following clauses added.

The defendant on the trial offered evidence to prove, and did prove, that he was not at home at the time when the defendant's dog bit the plaintiff, and did not know of the occurrence until afterwards; that the last time that the plaintiff was at the defendant's house previous to this occurrence they had some difficulty in relation to a trade, and the defendant at that time refused to purchase any more goods of the plaintiff; that the dog was at the time of the injury alone in said inner room of the defendant's house, with the defendant's wife and daughter, and that the plaintiff entered the house and the room without the permission of the defendant or of the inmates of the house. And the defendant thereupon claimed that the law was so that the plaintiff upon the facts was not entitled to recover, and that in so entering without permission he was guilty of a wrong on his part which materially contributed to his injury. But the court overruled the claim, and rendered judgment for the plaintiff to recover of the defendant $36 damages and his costs. The defendant moved for a new trial.

*C. Ives,* in support of the motion, contended that the plaintiff had been guilty of negligence, in entering unbidden and without license into the inner room of the defendant's house, and that this negligence had contributed directly to the injury;

that the plaintiff could not recover where he had been even slightly negligent, although the defendant had been grossly negligent ; (citing *Neal* v. *Gillett,* 23 Conn., 443 ; *Park* v. *O'Brien,* id., 339 ; *Birge* v. *Gardner,* 19 id., 507 ;) that the defendant had a right to keep such a dog within his house for the protection of the house, and where none but intruders were exposed to injury from him, and so was in no fault; that it made no difference that the plaintiff supposed he was invited to enter, since he was not in fact, and was guilty of carelessness in supposing so ; and especially that he had no right to enter in that way, after the defendant had had a difficulty with him and had refused to trade any more with him, the entry being solely for the purpose of trade ; and that, although he knocked at the outside door and supposed he was permitted to open it and go in, yet that he had no right to enter an inner room without again knocking and obtaining permission.

*C. R. Ingersoll* and *Clark,* contra, contended that even if the plaintiff had been guilty of a technical trespass in entering the house unbidden, it was the duty of the defendant or his family to request him to go out before using violent means to eject him ; (citing 1 Selw. N. P., 32 ; *Weaver* v. *Bush,* 8 T. R., 78 ; *McIlvoy* v. *Cockran,* 2 A. K. Marsh., 271 ; *Green* v. *Goddard,* 2 Salk., 641 ;) that it did not appear that the plaintiff intentionally committed the trespass, while it did appear that he was without fault except in entering unbidden ; that while the plaintiff was thus free from all intentional fault he was attacked by the dog, which was a ferocious one, and badly injured ; that the dog was not assisting the family to drive him from the house, but attacked him at once upon his coming in, and that if it had been employed by them for that purpose they had no right to use such means ; (citing *Wilde's case,* 2 Lew. C. C., 214 ; *Gregory* v. *Hill,* 8 T. R., 299 ; *Ford* v. *Logan,* 2 A. K. Marsh, 324 ;) and that the defendant was guilty of gross negligence in keeping a dog of such character, known to him to be of ferocious habits, in a place where he was able to commit such an injury, and where innocent persons were liable to be attacked by him.

BUTLER, J. The rule applicable to actions founded upon the negligence of the defendant, " that if the negligence of the plaintiff essentially contributed to the injury he can not recover," is too well settled to be questioned; but it is not applicable to this case. There is but one count in this declaration, and that is framed upon a statute, which enacts that " whenever any dog shall do any damage, either to the body or property of any person, the owner, &c., shall pay such damage, to be recovered in an action of trespass." This statute is clear and comprehensive in its terms; and if it is literally construed, it imposes an obligation on the owner, &c., of every dog, to pay for any and all damage it may do of its own volition, and when the owner does not set him on and become thereby liable to be sued as for a personal trespass; and the questions made in the court below in bar of the action, relative to the character of the dog, the supposed trespass of the plaintiff, and the negligence of either party, were immaterial. The act extends the liability of the owner of a dog beyond that existing at common law, but no good reason has been urged, and we know of none, why the intention of the legislature should not be holden to have been what the language imports; and there is very clear evidence, derived from the state of the common law as it then stood, the mischief which occasioned the passage of the act, and the general policy of the state indicated by its legislation relative to dogs, that such was their intention. As the law in relation to this animal is peculiar, and there was evidently a misapprehension on the trial in respect to the effect of the statute and the applicability of the common law doctrines of negligence and *scienter*, and such misapprehension has been before observed, we think it well to give the subject a somewhat extended consideration.

At common law property in a dog, though recognized, has always been held to be " base," inferior, and entitled to less regard and protection than property in other domestic animals. Three reasons may be assigned for this. First, " dogs do not serve for food," and for that reason " the law held that they had no intrinsic value," and " therefore " says Blackstone, (Vol. 4th, 236,) " though a man may have a base property

therein, and maintain a civil action for the loss of them, yet they are not of such estimation as that the crime of stealing them amounts to larceny." Although since protected by express statutes from theft, the common law estimate of property in them has never been changed. Second, because the dog, in common with the class of wild animals to which he originally belonged, is subject to the most distressing and incurable disease known, which he is inclined to communicate, and frequently, if not destroyed, does communicate, by his bite, to animals and mankind. For that reason any person, without regard to any right of property in the owner, may kill a mad dog, or one that is justly suspected of being mad, and stand justified at common law and by our statute. Rev. Stat., tit. 3, sec. 73. So, according to modern decisions, he may be killed by any person, if known to have been bitten by a mad dog, although the same rule would not be applied to other more useful and less dangerous animals. *Putnam* v. *Payne*, 13 Johns., 312. And the third reason is, that the dog is chiefly propagated, kept and used for purposes, (viz., hunting, and the protection of the family, person and property of his owner,) which require that he should retain in some degree the natural ferocity and inclination to mischief which characterize him. Thus kept, trained and used, he is liable to become *mischievous*, and injure the *property* of others—*noisy*, and a *private nuisance*—*ferocious*, and accustomed to bite persons, and therefore dangerous to the community and a *common nuisance ;* and these three characteristics impose corresponding obligations upon his owner, and give corresponding methods of redress for an injury committed by an action or by the destruction of the animal, or both.

1st. As to injury to property. If a dog becomes *mischievous* and inclined to injure the property of others, "his owner is bound to restrain him *on the first notice ;*" and liable for any mischief he may thereafter do to property of *any kind.* This is elementary law. So, although a dog can not by entering *alone* on the land of another and doing mischief, subject his owner to the action of trespass *quare clausum*, as cattle and other animals which are naturally inclined to rove, and winged ani-

mals that prey upon the crops, may do, yet if the owner trespass, and while on the land his dog unbidden and against his will does mischief, that action will lie for the injury.  1 Chitty Pl., 71 ; *Beckwith* v. *Shordike* 4 Burr., 2092 ; *Van Leuven* v. *Lyke*, 1 Comst., 515.   And so, whether before mischievous or not, or whether, if so, his owner has knowledge of his disposition or not, if actually found doing mischief or attempting to do it alone, out of the possession of his owner or the charge of a keeper, he may be killed, and the act justified at common law.  *Barrington* v. *Turner*, 2 Levinz, 28 ; *Protheroe* v. *Mathews*, 5 Car. & P., 581.   And this also by statute in this state.   Rev. Stat., tit. 3, § 73.   And so he may be destroyed under any circumstances where it is absolutely *necessary* for the preservation of property.   *Janson* v. *Brown*, 1 Campb., 41 ; *Wells* v. *Head*, 4 Car. & P. 568.   Other animals may become vicious and injure persons or property, and the injured person may have his action, but may not kill them ; and the discrimination against dogs results legitimately from their proneness to mischief, their uselessness and liability to hydrophobia, and the consequent base character of property in them, and the necessity for that protection, inasmuch as the right to an action *quare clausum* is limited to one or two cases only, and no action at all can be had at common law for the first mischief, or without proving a *scienter*.

2d.  The dog is a *noisy* animal, and may in that way become a nuisance and be destroyed.   Thus, it has been holden that a dog which is in the habit of haunting the dwelling house of another by day and night, and by barking and howling disturb the peace and quiet of its inmates, and can not be otherwise prevented, may be killed ; although a wanton destruction of a dog may not be justified.   *Brill* v. *Flagler*, 23 Wend., 354. Whether dogs kept on the premises of their owner, may by their noise become nuisances to adjoining proprietors, and subject their owner to action for a nuisance, seems to be an open question.   An elementary writer says they can not, (1 Hilliard on Torts, 2d ed., 644,) on the authority of *Street* v. *Tugwell*, 2 Selw., N. P., 1047, where an action was brought for keeping a kennel of pointers so near to the plaintiff's dwelling-house as to

disturb his family during the day time, and prevent them from sleeping in the night, and there was a verdict for the defendant. But that case has been doubted. It has been remarked that Lord Kenyon in refusing a new trial intimated that if the nuisance was continued, a new action could be brought, which was an intimation that an action could be *maintained;* and Judge Nelson, in *Brill* v. *Flagler,* supra, plainly intimates that the decision is not a correct exposition of the law. And if the noise of a boiler manufactory, (*Fish* v. *Dodge,* 4 Denio, 311,) or a steam engine, (*Davidson* v. *Isham,* 1 Stockton, 186,) may be a nuisance, *a fortiori* should a kennel of pointers who disturb the sleep of a family be, for undisturbed sleep is not merely a comfort, it is absolutely necessary to health.

3d. If the dog be *ferocious* and accustomed to bite mankind, the law is still more stringent in respect to the duty and liability of the owner, and the right of others to destroy it. Thus a ferocious dog accustomed to bite mankind is a *common nuisance,* and may be destroyed by any one. *Barrington* v. *Turner,* 2 Levinz, 28 ; *Brown* v. *Carpenter,* 26 Verm., 638; *Dunlap* v. *Snyder,* 17 Barb., 561; 1 Hilliard on Torts, 2d ed., 645. In England, if the owner permit him to run at large upon the highway, he is indictable for a misdemeanor. Burns' Justice, 578. And if sued for the killing of such a dog, the defendant need not allege or prove a *scienter.* *Maxwell* v. *Palmerton,* 21 Wend., 407. The *keeping* of such a dog is *wrongful* and *at the peril* of the owner, and therefore prima facie the owner is liable to any person injured by such a dog, without any averment or proof of negligence in securing or taking care of it, and irrespective of any question of negligence of the plaintiff. *May* v. *Burdett,* 9 Ad. & El., *N. S.,* 101 ; *Card* v. *Case,* 5 Mann. Grang. & Scott, 622. It has been doubted whether in respect to such a dog the owner could plead the *willful misconduct* of the plaintiff, after warning, as contributing to the injury, even if it was the *sole cause* of it. *May* v. *Burdett,* supra. " It may be," says Lord Camden in that case, " if the injury was solely occasioned by the willfulness of the plaintiff after warning, that may be a ground of defence by plea in confession and avoidance," and

Woolf *v.* Chalker.

it would seem that if the plaintiff have knowledge of the ferocity of the animal, and provoke him willfully, he should be considered to have purposely brought the injury on himself, and be left to bear it, although the owner of the dog be in the wrong in keeping him. 1 Hilliard on Torts, 2d ed., 652. It was holden expressly by Ch. Justice Lee, in *Smith* v. *Pelch*, 2 Strange, 1264, that the owner of such a dog was liable when he was *accidentally trodden upon* as he was lying at the owner's door and bit the person, for, said the Chief Justice, " it " (the injury) " was owing to his " (the owner) " not *hanging the dog on the first notice.* And the safety of the king's subjects ought not to be afterwards endangered." A like verdict was had where such a dog was irritated by a child and bit it. And when the owner of such a dog has permitted him to run at large, on his own premises, and a *trespasser* has been bitten by him, the owner has been holden liable. *Loomis* v. *Terry*, 17 Wend., 496 ; *Sherfey* v. *Bartley*, 4 Sneed, 58.

The principles which underlie these decisions relative to a *ferocious dog* were fully discussed by the late Judge Sherman, and adopted by this court, in *Johnson* v. *Patterson*, 14 Conn., 1, which was an action brought against a defendant for placing poison upon his own land, so that it could be and was taken by the plaintiff's fowls which were trespassing. A man may not, in this country, use dangerous or unnecessary *instruments* for the protection of his property against trespassers. Such instruments may be used in England, but the principles on which their decisions purport to rest are not sustainable or applicable here. The true principles of the common law are recognized here, and a man may use that force which is necessary to protect his property and no more. And he may keep and use *such instruments* and no other, as the same necessary degree of force will justify. A *dog* is an *instrument* for protection. A *ferocious* one is a *dangerous instrument*, and the keeping him on the premises to protect them against *trespassers* is unlawful, upon the same principle that setting spring guns, or concealed spears, or placing poisonous food is unlawful.

This review shows that the defendant in this case would have been liable at common law, if the action had been

brought in that form. The court found that the dog was ferocious, accustomed to bite, dangerous, and an improper animal to be kept for protection in the day time, and that the defendant knew it. The defendant had no right to keep such a dog for any purpose, unless in an enclosure or building, in the night season, and cautiously, as a protection against criminal wrong doers, nor then perhaps, if his size and ferocity were such as to *endanger life*, as a protection against any thing but a felony " by violence or surprise." Certainly he could not keep him on his premises in the day time in such manner that a person by *accident*, *mistake*, or a voluntary or involuntary *trespass*, might be exposed to his fury and be injured. In this case if the plaintiff was a trespasser at all, he was so unintentionally, involuntarily, and by mistake. In *Beckwith* v. *Shordike*, 4 Burr., 2092, it was holden that such a trespass might be justified. However that may be, the common law clearly protects a *trespasser* against a *ferocious* dog.

And this review of the common law will serve to show that the statute, literally construed, does not go a great way beyond it. In respect to a mischievous dog, it makes the owner liable for the first injury to property, and without regard to his knowledge of a mischievous propensity. And in respect to a ferocious one, it extends the liability of the owner to every injury to the person, whether the owner knew of his ferocity or not, unless committed in protection of his master's premises against a felony.

That it was the purpose of the law thus to extend protection to persons and property, further and conclusively appears from an examination of our legislation respecting the animal. The owners of dogs have often been heavily taxed for them, and authority given to kill them if the taxes were not paid; and if running at large without a collar they may be killed by any one. We have seen that by statute any person may kill them if found at large doing mischief. In 1732 an act was passed, providing that when any contagious disease broke out in any town, in order to prevent the spreading of it by dogs, they should all be killed by their owners, and if they did not kill them any person might do it. In 1736 it was enacted

that if any sheep were killed, and it was not known by what dogs, and complaint should be made *on suspicion* to the selectmen or sheep master, and there was great reason for suspicion, they might order the dogs to be killed ; and that the owners of such suspected dogs should be liable to pay for the injury, unless they could prove that their dogs did not do the mischief ; thus not only depriving the owners of their property in the suspected dogs, but making such *suspicion* a *prima facie* ground of liability for the value of the sheep. That law was in force when the statute in question was passed, and until the revision of 1821. In 1765 an act was passed, reciting in the preamble that much mischief had been done by dogs, and that the hydrophobia was prevalent, and authorizing the selectmen of towns to make rules, orders and regulations for confining, restraining, killing and destroying them, and providing penalties for enforcing such orders. This power was subsequently, in 1798, transferred to two justices, and in 1853 like power was given concurrently to towns, and thus it remains. In 1789 an act was passed making the owners of dogs liable for all damage they might do to sheep, " *although such owner or owners may not have known such dog or dogs to be accustomed to do such mischief*"—thus abrogating the common law doctrine of *scienter*. Nine years afterwards, in 1798, the statute in question was passed, abrogating it as to persons and property generally, and both remained on the statute book till the revision of 1821, when that expressly relating to sheep was omitted, and the general and comprehensive one of 1798 retained. It is not to be supposed that the revisors or the legislature of 1821 intended to withdraw any protection from sheep ; or that they deemed them more entitled to it than men, or that the change was made in favor of property in dogs ; or for any other reason than because they were engaged in the work of simplifying and condensing the laws, and thought the statute in question broad enough to cover the whole ground, and therefore omitted the others.

A new trial is not advised.

In this opinion the other judges concurred.