ELLIOTT *v.* HERZ.

## Isaac Elliott v. August Herz.

*Injuries to domestic animals ; Double damages : Penalty : Mad dogs.* The stat-
ute (*Comp. L. 1871*, § *2065*) making the owner liable in double damages for the
killing, wounding or worrying of domestic animals by a dog, is penal in its
consequences, and is not designed for cases where the owner was in no man-
ner in fault ; it does not apply to the case of a rabid dog.—GRAVES, CH. J.,
dissenting.

*Exemplary damages.* Damages in excess of the real injury are awarded in some
cases because the conduct of the party has been peculiarly malicious, vindictive,
or reckless, but are never appropriate to cases where the injury has proceeded
from his misfortune rather than from any blamable misfeasance or nonfeas-
ance.

*Heard January 14.    Decided April 21.*

Error to Washtenaw Circuit.

*E. Thatcher*, for plaintiff in error.

*Lawrence & Sawyer*, for defendant in error.

COOLEY, J.

The statute which makes the owner of a dog liable in
double damages for the killing, wounding or worrying by
him of domestic animals, is penal in its consequences, and
cannot be supposed to have been designed for cases in
which the owner was in no manner in fault. Damages in
excess of the real injury are awarded in some cases because
the conduct of the party has been peculiarly malicious, vin-
dictive or reckless, but never where the injury has pro-
ceeded from his misfortune rather than from any blamable
misfeasance or nonfeasance.

By the common law the owner of a dog was not liable
for an injury done by him, unless it could be shown that
the owner was previously aware of his mischievous propen-
sity. This rule operated harshly in many cases, because
the evidence of such propensity would generally be in the
knowledge mainly or exclusively of the owner himself, and
it often occurred that his misconduct in failing to restrain

a dog he knew to be vicious could not be shown. The statute changes this rule, and makes the owner liable without this proof; and it seems to assume that in such a case the owner is presumptively in fault, for the double damages could not be justified on any other assumption. But I do not see how this statute can be held to embrace the case of a rabid dog. There can be no presumption that his rabid and uncontrollable condition is the owner's fault, unless he has had reason to believe that the dog had been bitten by a rabid creature, and had neglected to restrain or destroy him afterwards; and in such a case the common law would afford suitable remedy.— *Woolf v. Chalker, 31 Conn., 128–9.* The injury from the bite of a rabid dog must be classed with those from inevitable accident, which the law always leaves to rest where they chance to fall, because, as no one was in fault, there is no basis for an assessment of damages against any one. And if the statute in question could be held imperatively applicable to all cases of injury to domestic animals by dogs, it might well happen that the dog of A, becoming rabid from the bite of the dog of B, and in his frenzy destroying the sheep of B, would render his owner liable to exemplary damages, when, if any presumption of fault should be indulged against any one, it should be against B himself, whose dog communicated the madness.

I find in the statute nothing beyond a purpose to give adequate remedy without the necessity which existed at the common law, of proving the owner's knowledge of his dog's vicious habits. The pith of the statute is in the words, "it shall not be necessary in order to sustain an action, to prove that the owner or keeper knew that such dog was accustomed to do such damage or mischief." This manifestly refers to a vicious and destructive habit, from indulgence in which the mischief has resulted; and is inapplicable to the case of a rabid dog. What he does in his frenzy is wholly involuntary, and there is no such thing as his being accustomed to the mischief of madness, for the frenzy itself exists but once, and terminates his life. The

phraseology of the statute is not suited to such a case, and it seems to me reasonable to suppose that if the legislature had purposed to give a remedy against the owner of a rabid dog for mischief done by him, especially if it was to be punitory in its nature, such remedy would have been given in more distinct terms, and been made to depend upon the owner's misconduct or negligence. I therefore think the circuit judge ruled correctly, and that the judgment should be affirmed.

CAMPBELL, J., concurred.

GRAVES, CH. J.

The plaintiff brought this suit on the statute (*Comp. L.,* § *2065*) to recover on account of injuries done to his sheep by the defendant's dog.

On the trial it appeared that some of the plaintiff's sheep were killed and others injured by the defendant's dog, and also that the animal was at the time rabid; and the defendant took the ground, and the court sustained it, that the statute was not intended to apply to mad dogs.

This view of the law was very ingeniously defended before us on the hearing, but I cannot assent to it. The argument rests finally on the assumption that the system of legislation to which the act in question belongs has not had in view the state of these animals in which they are most dangerous,—a state, too, into which they have always been prone to fall,—but has been aimed to afford protection against them only when in a condition to cause the least apprehension.

The law before us on which the plaintiff counted is general and positive, and unless the position taken by the defendant can be supported, and a tacit exception of mad dogs be consequently intended, the liability must be considered clear. And I think the position of the defendant is not well grounded.

The incentives to legislation here respecting these animals, as also the ends of such legislation, have not been peculiar to us. They have been the same which have prevailed elsewhere, and many of our enactments, if not all of them, have been in substance copied from other states. An examination will show that several have been borrowed from Massachusetts; and many of the early acts there and elsewhere in New England are found to contain preambles with explanations of the inducements and objects. We have only to reflect upon the course and history of the legislation in the United States, to find that it has proceeded and been based upon grounds common and identical, and there is perhaps no one of the old states whose statutes will not expressly illustrate the subject and distinctly reveal the liability of dogs to madness as among the chief causes of the regulations which have been made. The case of *Woolf v. Chalker,. 31 Conn., 121, 133,* refers to an early regulation in that state, where the preamble stated the prevalence of hydrophobia as the occasion for it; and in *Blair v. Forehand, 100 Mass., 136,* we are told by the court that "the dangers sought to be prevented by the dog laws of the commonwealth, as declared in the preamble to the earlier ones, are sudden assaults upon persons, worrying, wounding and killing of neat cattle, sheep and lambs, 'distressing evils from canine madness,' and other injuries occasioned by dogs." The policy of our statutes is the same, and it takes away the ground of the defendant's argument. The law on the one hand pays regard to the strong and prevalent desire to retain these animals, but at the same time takes notice on the other, of their normal propensities, and also of their proclivity to that condition in which they are most dangerous to man and beast; and while tolerating them in deference to general sentiment, it keeps in view *all,* and not merely *part* of the considerations of danger, and holds the person who chooses to take the hazard of owning or keeping a dog, to the stringent responsibility marked out. When we closely examine the matter, we are forced to think that

it is inconsistent with the spirit of this law to divide the risk incident to a person's election to hold such an animal, and subject the party thus voluntarily keeping what the law treats as something dangerous for the least harmful of the possible consequences, and cast upon innocent third persons, who have had no share in the origination or perpetuation of the cause of danger, the most dire and serious of the loss and mischief which result. Of course these observations will be received as designed only for the statutes we are required to construe. The abstract propriety of the regulation is something for legislative and not judicial consideration. Whether it is strictly and absolutely just or politic to make the person who is so unfortunate as to have his dog become mad, and who is wholly blameless, except in being the owner of a dog, if indeed that can be called blameworthy, positively liable for an injury committed by the creature in his fit, and if so, then liable beyond the actual damage, is a subject cognizable by another department.

As the law now stands, however, it is so distinct and positive, and its fundamental policy seems so evident, that we cannot, without invading the province of the legislature, assume to decide that the condition of the dog takes the case wholly or partly out of the act. To do that would be to repeal the law in respect to the most dangerous description of dogs. I am therefore constrained to think that the court erred in holding that the dog's madness exempted the owner, and am of opinion that the judgment should be reversed, with costs, and a new trial ordered.

CHRISTIANCY, J., did not sit in this case.