## Frances Basney *v.* Orvin Klema et al.

Appellate Division of the Circuit Court

File No. CV 17-627-2001

Argued November 18, 1963—decided April 8, 1964

*John J. Mahon,* of Hartford, for the appellants (defendants).

*Harry E. Yard,* of Bristol, for the appellee (plaintiff).

Kosicki, J.  This action was brought to recover damages for personal injuries alleged to have been

inflicted on the plaintiff by a dog owned by the defendants. The trial court rendered judgment for the plaintiff to recover $1046.50, and from this judgment the defendants have appealed.

The complaint was in one count alleging that the plaintiff operated a dog kennel; that the defendants requested the plaintiff to groom a dog belonging to them; that, while in the process of grooming the dog, and without warning, the plaintiff was viciously attacked and bitten; that the defendants were negligent in failing to disclose to the plaintiff that the dog was vicious when they knew or should have known of the dog's vicious nature; and that the plaintiff was seriously injured as a result of the violent and vicious attack by the defendants' dog.

The defendants denied liability and filed special defenses alleging negligence on the part of the plaintiff and assumption of risk. The court ruled, notwithstanding the plaintiff's claim of defendants' statutory liability, that the action was one in negligence at common law and not under the dog statute, § 22-357 of the General Statutes. To recover under the statute, the plaintiff must bring herself clearly within its provisions. *Schonwald* v. *Tapp*, 142 Conn. 719, 722; *Goodwin* v. *Giovenelli*, 117 Conn. 103, 107. The complaint alleges negligence and scienter on the part of the defendants, either or both of which are essential elements in a common-law action to recover for injuries inflicted by a dog. *Verrilli* v. *Damilowski*, 140 Conn. 358, 360.

The finding, with the corrections and additions to which the defendants are entitled, shows the following facts: The plaintiff and her husband own, operate and engage in the business of boarding, trimming, grooming and professionally handling dogs. The plaintiff has been engaged in this

occupation for approximately twenty years. On December 20, 1961, the defendant Orvin Klema delivered to the plaintiff's husband for grooming a cocker spaniel, acquired by both defendants some years before and kept by them as a pet in their home. Nothing was said by the plaintiff's husband or the defendants concerning the temperament of the dog. The plaintiff and her husband had groomed the dog on at least eight other occasions. On each of these occasions the procedure followed was the same as that followed on December 20, 1961. This consists in first brushing and washing the dog; drying with a handblower; and placing the dog on a grooming table with his head within a trimming loop attached to an arm fastened to one of two metal posts, one on each side of the dog's head. The grooming process consists of applying electric clippers to the head and removing the extra coat; brushing and using thinning shears on the coat to take out the bushiness, removing mats, and trimming the nails. The entire process takes approximately two hours.

After this grooming had been completed on December 20, and while the plaintiff and her husband were giving the dog a final brushing and combing, the dog suddenly and without warning turned his head and bit the plaintiff's upper lip, causing the injuries complained of. At the time of the biting, the plaintiff was running a comb through the dog's coat, in which there were no mats or snarls. During this operation, her face was at approximately the same level as the dog's face and eight to ten inches away. At no time during the thinning procedure did the plaintiff use a sling or tranquilizers, or any means or devices other than those described, to restrain the dog. On each of the prior grooming operations the dog was mild and docile. Sometime prior to the date of this incident, the defendants

had attempted to comb the dog and remove mats from his coat, but the dog would not remain still during the combing and would snap at them, jump off the table and run into a corner. No information concerning such behavior of the dog and the circumstances surrounding it was given to the plaintiff by the defendants at the time of delivery of the dog for grooming. The plaintiff, had she known of any vicious propensities of the dog, would have taken extra precautions by making the trimming post a little higher so that the dog would not be as free to move about, or by having her husband hold the dog's head. Just before the biting, neither the plaintiff nor her husband was holding the dog, and the dog had freedom of movement in all directions. At no time before December 20, 1961, did the dog bite or exhibit any dangerous propensities toward a human being, within the knowledge of the defendants.

Owing perhaps, to the antiquity of our dog statute (enacted in 1798; Statutes, 1808, p. 238), eliminating proof of scienter in cases like this, there is only one decision of the Supreme Court of Errors based on the common law. In *Arnold* v. *Norton*, 25 Conn. 92, it was held that the trial court's charge, that full and satisfactory proof of a single instance of biting mankind by a dog, previous to the act complained of, and knowledge of such act by the defendant would warrant recovery by the plaintiff, was unexceptionable. That case was decided in 1856. If the rule simply stated therein should be followed in the case before us, then the judgment could not be sustained because there is no evidence of a first free bite or of scienter. In *Woolf* v. *Chalker*, 31 Conn. 121, an action under the statute brought by a trespasser who was bitten by a ferocious dog, the court, in a comprehensive dictum reviewing the common law, drew a distinction be-

tween a mischievous dog and a ferocious dog. "And this review of the common law will serve to show that the statute, literally construed, does not go a great way beyond it. In respect to a mischievous dog, it makes the owner liable for the first injury to property, and without regard to his [owner's] knowledge of a mischievous propensity. And in respect to a ferocious one, it extends the liability of the owner to every injury to the person, whether the owner knew of his ferocity or not, unless committed in protection of his master's premises against a felony." Id., 132. The trial court in that case had found that the dog was ferocious, accustomed to bite and dangerous, and that the defendant knew it.

In *Granniss* v. *Weber,* 107 Conn. 622, 625, the Supreme Court, reviewing the history of our statutory provisions and commenting on the duties imposed by them and by the common law, said: "Their principal purpose and effect was to abrogate the common-law doctrine of *scienter* as applied to damage by dogs to persons and property, so that liability of the owner or keeper became no longer dependent upon his knowledge of the dog's ferocity or mischievous propensity; literally construed the statute would impose an obligation on him to pay for any and all damage the dog may do of its own volition." See also *Weingartner* v. *Bielak,* 142 Conn. 516, 518. "The statute is drastic, and its purport is that a person who owns a dog does so at his peril." *Ingeneri* v. *Kluza,* 129 Conn. 208, 210.

Under the common law of this state, it has been held that liability for injuries committed by a vicious animal is grounded in negligence; that it is the duty of the owner of such an animal, having knowledge of its propensity, to give notice of it or to restrain the animal, and that failure to do so

is negligence which makes the owner liable for its consequences. *Ford* v. *Squatrito,* 86 Conn. 710 (dog); *Hope* v. *Valente,* 84 Conn. 248, 251 (horse); *Baldwin* v. *Ensign,* 49 Conn. 113, 117 (horse); *Bischoff* v. *Cheney,* 89 Conn. 1, 4 (cat). It is true that our earlier decisions accepted and enunciated as a factual assumption that dogs and cats, even in a state of domestication, never wholly lost their wild natures and destructive instincts and were regarded as baser and more likely to revert to a state of wildness or viciousness than other, more useful, domesticated animals. See *Wilton* v. *Weston,* 48 Conn. 325, 336. This classification reflected the accommodations of a rural economy in which dogs chiefly served the purpose of guarding property and persons, shepherding sheep and tending cattle, and cats were the exterminators of rodents infesting the houses and barns of the countryside. This view survives in our dog statute; but as to cats the common-law rule prevails, that to charge an owner with liability the injured person must prove that the animal was of a vicious or mischievous disposition and hence liable to attack people and that the owner knew of it. *Pallman* v. *Great Atlantic & Pacific Tea Co.,* 117 Conn. 667, 668.

The gist of the complaint in the present case is that the plaintiff was bitten by a dog owned by the defendants and known by them to be vicious though they had not informed the plaintiff of that fact. Neither the trial court nor the parties have considered the rule in *Arnold* v. *Norton,* 25 Conn. 92, applicable, and, in a general sense, they have followed the rationale in cases brought and decided under the statute, with the addition thereto of the doctrine of scienter. Cf. *Schonwald* v. *Tapp,* 142 Conn. 719 (provocation, abusing); *Weingartner* v. *Bielak,* 142 Conn. 516 (playing with dog); *Verrilli* v. *Damilowski,* 140 Conn. 358 (trespass by plain-

tiff); *Malone* v. *Steinberg,* 138 Conn. 718 (fall caused by fright); *Hanson* v. *Carroll,* 133 Conn. 505 (trespass or tort); *McCarthy* v. *Daunis,* 117 Conn. 307 (trespass); *Granniss* v. *Weber,* 107 Conn. 622 (overturning car); *Dorman* v. *Carlson,* 106 Conn. 200 (trespass); *Kelley* v. *Killourey,* 81 Conn. 320 (provocation). The statute, of course, makes the liability absolute except where the person injured was committing a trespass or other tort, or was teasing, tormenting or abusing the dog at the time. *Weingartner* v. *Bielak,* supra, 518, 519.

At common law, to sustain an action for injuries caused by a dog, the plaintiff must prove that the dog had vicious propensities and that the owner or keeper had knowledge, or the means of knowledge, of them. *Frederickson* v. *Kepner,* 82 Cal. App. 2d 905, 908; 2 Harper & James, Torts § 14.11. The gravamen of the action to recover damages for injuries caused by a dog is notice to or knowledge by the owner that the disposition of the animal is such that it would be likely to commit an injury similar to the one complained of. 4 Am. Jur. 2d, Animals, § 95; 3 Stevenson, Negligence in the Atlantic States § 814. Where the dog is ferocious to the degree that there is reasonably discernible a tendency to revert to its wild habits, the liability is absolute unless the owner can be relieved of it by some culpable act or omission on the part of the person injured. See such cases as *Woolf* v. *Chalker,* 31 Conn. 121, 130; *Muller* v. *McKesson,* 73 N.Y. 195, 200; *McCaskill* v. *Elliot,* 5 Strob. 196 (S.C.); *Rider* v. *White,* 65 N.Y. 54; *Dauber* v. *Boyajian,* 62 F.2d 1002, 1003 (2d Cir.).

What constitutes viciousness is often a puzzling question, to be resolved by the facts of a particular case. In *Melicker* v. *Sedlacek,* 189 Iowa 946, where the injuries were caused by the dog's running into

and upsetting a car, the court said (p. 959): "Most of the cases are where there was an attack of some kind by worrying or biting, or the appearance of a ferocious attack, and we assume it is for that reason that the definitions for 'vicious' or 'vicious animal' are not plentiful. One naturally gets the idea that there is an element of savagery or fierceness, ferociousness, or mischievousness, as in worrying other animals, as a sheep-worrying dog, etc. . . . [A] vicious propensity is not confined to a disposition on the part of a dog to attack every person he might meet, but includes, as well, a natural fierceness or disposition for mischievousness, as might occasionally lead him to attack human beings without provocation." "Dogs, like humans, are unpredictable. Either, for no apparent reason, may suddenly go berserk." *Chandler* v. *Vaccaro,* 167 Cal. App. 2d 786, 789; see also *Fowler* v. *Helck,* 278 Ky. 361; *Warrick* v. *Farley,* 95 Neb. 565; *Splaine* v. *Eastern Dog Club, Inc.,* 306 Mass. 381.

The only evidence of scienter to support the court's finding was that one of the defendants, when he returned to pick up the dog, had said that he had been unable to brush or comb the dog at home because the dog snapped and was touchy about it. This the defendants denied. The testimony as to this prior contradictory statement was admissible not only as affecting the credibility of the defendant who, testifying, denied the statement but also as an admission against his interest. *Stitham* v. *LeWare,* 134 Conn. 681, 683; *Hill* v. *Small,* 129 Conn. 604, 605; *Saunders' Appeal,* 54 Conn. 108, 114. The court found that the dog was vicious and mischievous because he snapped at the defendants when they endeavored to brush or comb him. The mere fact that a dog has snapped, without other proof of a vicious disposition cannot sustain the conclusion that the dog was vicious. *Prince* v. *Fried,*

194 App. Div. 282 (N.Y.); 4 Shearman & Redfield, Negligence (Rev. Ed.) p. 1603.

The court also concluded that the defendants were negligent in failing to warn the plaintiff of the tendency of the dog to snap during the process of being brushed or combed. That presupposes that the defendants had knowledge or means of knowledge of some propensities of the dog likely to cause injury which was superior to that of the plaintiff. If, in fact, the dog had exhibited vicious propensities in the past, the nondisclosure of them to a bailee or animal handler might, under certain circumstances, be considered negligence. *Buffington* v. *Nicholson,* 78 Cal. App. 2d 37; *Brune* v. *DeBenedetty,* 261 S.W. 930 (Mo.). In the case before us, the plaintiff had groomed the dog, by the same method, on at least eight prior occasions. It is assumed in the finding, without evidence, that the characteristics described developed between the time of the last grooming and the date when the injury occurred. There was no evidence that any such mischievous propensities in the dog were observed by the defendants as would place upon them the duty to inform the plaintiff of the propensities. *Cooper* v. *Cashman,* 190 Mass. 75.

The defendants had specially pleaded contributory negligence and assumption of risk on the part of the plaintiff. Since we fail to find that the defendants were negligent and so caused the injury complained of, it is unnecessary to consider whether the plaintiff was contributorily negligent, except, of course, as the plaintiff's act might be such as to amount to a provocation or cause of the injury. Nor is it necessary for us to consider the special defense of assumption of risk. "[T]he plaintiff's assumption of a risk is only the counterpart of the defendants' lack of duty to protect the plaintiff

from that risk." 2 Harper & James, Torts § 21.1; see also such cases under our statute as *Schonwald* v. *Tapp*, 142 Conn. 719, 722, and, at common law, *Rosedoff* v. *Consolidated Rendering Co.*, 94 N.H. 114; *Gray* v. *Pflanz*, 341 Ill. App. 527, 532; note, 66 A.L.R.2d 916, 957 § 6 d (under statute), 969 § 9 (at common law).

There is error, the judgment is set aside and the case is remanded with direction to render judgment for the defendants.

In this opinion PRUYN and JACOBS, Js., concurred.