MARY ANNE MANN *v.* GLADYS REGAN
(AC 28736)

Flynn, C. J., and Robinson and Peters, Js.

---

Argued April 15—officially released June 24, 2008

*James F. Sullivan,* for the appellant (defendant).

*Gerald S. Sack,* with whom, on the brief, was *Eamonn Wisneski,* for the appellee (plaintiff).

*Opinion*

FLYNN, C. J. The plaintiff, Mary Anne Mann, brought this action to recover damages for injuries she had sustained to her face when she was bitten by a dog owned by the defendant, Gladys Regan. The defendant appeals from the judgment of the trial court rendered in favor of the plaintiff after a jury trial. On appeal, the defendant claims that (1) the court improperly admitted into evidence a statement of the defendant's daughter and the defendant's silence in response to that statement under the tacit admission exception to the hearsay rule, (2) the court improperly instructed the jury and (3) the evidence was insufficient to support the jury's verdict. We reject the defendant's claims and affirm the judgment of the trial court.[1]

The jury reasonably could have found the following facts. At the time of the incident in December, 2004, the plaintiff and the defendant had been friends for approximately thirty years. The plaintiff resided in Windsor, and the defendant lived in Florida and was the owner of a Lhasa Apso dog named Sam. The defendant's dog was afraid and distrustful of strangers and would bark at strangers. The dog would become upset

---

[1] In the event that the defendant prevailed on appeal, the plaintiff presented an adverse ruling of the trial court for our consideration pursuant to Practice Book § 63-4 (a) (1) (B). The plaintiff claimed that the court improperly granted the defendant's motion to strike the second count of the complaint. Because we affirm the trial court's judgment, we do not reach this issue. See *Travelers Ins. Co.* v. *Namerow,* 261 Conn. 784, 786 n.2, 807 A.2d 467 (2002).

when people hovered or leaned over him. In addition, loud noises and sudden movements sometimes would upset the defendant's dog.

On December 17, 2004, the defendant traveled to Connecticut with her dog. The plaintiff and her friend, Barbara Scanlon, met the defendant at the airport. While the defendant retrieved her luggage, Scanlon watched the dog, and, during this time, the dog growled at Scanlon when she reached her hand down toward the dog. The defendant stayed at the plaintiff's house for a few days before departing on December 20, 2004, to attend a wedding in Wisconsin. Because the parties previously had agreed that the plaintiff would care for the defendant's dog while the defendant traveled out of state, the dog remained at the plaintiff's house.

Approximately six hours after the defendant left for Wisconsin, the plaintiff noticed that the dog was sitting on her couch in the sunroom. The plaintiff decided to place a blanket underneath the dog, and, as she leaned in toward the dog, the dog suddenly bit the plaintiff's right cheek, causing severe puncture wounds. The plaintiff immediately telephoned Scanlon, and Scanlon, after arriving a few minutes later, drove the plaintiff to a medical clinic where the plaintiff received treatment.

On December 22, 2004, the defendant and her daughter went to the plaintiff's house to retrieve the defendant's dog. Upon arriving, the defendant observed the plaintiff's injuries, and a discussion ensued in which, inter alia, the plaintiff explained the incident. Thereafter, the defendant departed. The plaintiff continued to receive medical treatment for her injuries.

The plaintiff subsequently filed this action to recover damages from the defendant, claiming that the defendant was liable on a theory of common-law negligence. The complaint also contained a claim that the defendant was liable under General Statutes § 22-357, the "dog

bite" statute, a strict liability statute for any injury caused by a dog, but the court struck this count.

A jury trial commenced on March 1, 2007. At the conclusion of the plaintiff's case-in-chief, the defendant orally made a motion for a directed verdict, arguing that the evidence was insufficient to establish that the defendant was negligent. The court stated that it would take the defendant's motion under advisement. The defendant did not present any evidence, thereby concluding the evidentiary phase of the trial. The defendant then renewed her motion for a directed verdict, to which the court replied that it would reserve judgment on the defendant's motion. The case was submitted to the jury, and, on March 2, 2007, the jury returned a verdict in favor of the plaintiff and awarded damages in the amount of $101,411.76. The jury also found that the plaintiff was 10 percent at fault for her injuries, and the damages award was reduced correspondingly. The court accepted the jury's verdict, and the defendant subsequently filed a motion to set aside the verdict,[2] which the court denied. Thereafter, the court rendered judgment in favor of the plaintiff.[3] This appeal followed. Additional facts will be set forth where necessary.

I

The defendant first claims that the court improperly admitted into evidence the statement of her daughter, Christina Hahn, and the defendant's silence in response to that statement under the tacit admission exception to the hearsay rule. The defendant argues that the plaintiff, as the proponent of the evidence, failed to establish

---

[2] In her motion to set aside the verdict, the defendant alleged that the court improperly (1) charged the jury, (2) admitted the statement of the defendant's daughter and (3) allowed the plaintiff to call Wes Mann, the plaintiff's husband, as a witness.

[3] The court's rendering of judgment in favor of the plaintiff was an implicit denial of the defendant's motion for a directed verdict, which was based on the claim of insufficiency of the evidence.

one of the requirements of that exception, namely, that the circumstances surrounding Hahn's statement naturally called for a reply from the defendant. We disagree.

The plaintiff made an offer of proof, outside of the jury's presence, that the plaintiff's testimony would include a hearsay statement pursuant to the tacit admission exception. During the proffer, the plaintiff testified that when the defendant came to retrieve her dog, the defendant was accompanied by Hahn. The plaintiff's friend, Scanlon, also was present at the plaintiff's house, and the four women were standing in close proximity in the plaintiff's kitchen. Upon observing the plaintiff's bandaged face, the defendant asked the plaintiff what had happened. The plaintiff informed the defendant that the defendant's dog had bitten her. The defendant then stated, "What do you mean Sam bit you? What did you do to him?" The plaintiff told the defendant that she did not do anything to the dog and then explained the dog bite incident. Hahn stated, "Well, mom, you know he bit you." The plaintiff further testified that the defendant, who was standing approximately five feet away, did not respond to Hahn's statement, nor did she deny Hahn's statement. The plaintiff testified that Hahn spoke loud enough for the defendant to hear. On the basis of the foregoing, the court concluded that the evidence qualified under the tacit admission exception to the hearsay rule and admitted it over the defendant's objection. The plaintiff subsequently testified before the jury in a manner consistent with the testimony she gave during the offer of proof. In addition, Scanlon testified in the jury's presence about Hahn's statement and the defendant's silence. The defendant claims on appeal that the court improperly admitted the evidence because one of the requirements of the tacit admission exception to the hearsay rule was lacking. We disagree.

Before addressing the defendant's specific claim, we first identify the applicable standard of review. "To the

extent a trial court's admission of evidence is based on an interpretation of the [Connecticut] Code of Evidence, [an appellate court's] standard of review is plenary. For example, whether a challenged statement properly may be classified as hearsay and whether a hearsay exception properly is identified are legal questions demanding plenary review. They require determinations about which reasonable minds may not differ; there is no 'judgment call' by the trial court, and the trial court has no discretion to admit hearsay in the absence of a provision providing for its admissibility. . . .

"We review the trial court's decision to admit evidence, if premised on a correct view of the law, however, for an abuse of discretion. . . . In other words, only after a trial court has made the legal determination that a particular statement is or is not hearsay, or is subject to a hearsay exception, is it vested with the discretion to admit or to bar the evidence based upon relevancy, prejudice, or other legally appropriate grounds related to the rule of evidence under which admission is being sought." (Citations omitted.) *State v. Saucier*, 283 Conn. 207, 218–19, 926 A.2d 633 (2007).

In the present case, the defendant does not argue that the court improperly construed the hearsay rule, nor does she assert that the tacit admission exception to the hearsay rule was identified improperly. Rather, the defendant's claim concerns the propriety of the court's determination that the circumstances naturally called for a reply from the defendant so as to satisfy the relevant requirements for the tacit admission exception. Because the court's assessment of whether the circumstances naturally called for a reply involves a "judgment call" by the court, we conclude that, under *Saucier*, the proper standard of review is the abuse of discretion standard.

Having identified the applicable standard of review, we now set forth the relevant legal principles that govern our resolution of the defendant's claim. "An out-of-court statement used to prove the truth of the matter asserted is hearsay and is generally inadmissible unless an exception applies." *DeMarkey* v. *Fratturo*, 80 Conn. App. 650, 654, 836 A.2d 1257 (2003). Section 8-3 of the Connecticut Code of Evidence provides that certain statements are "not excluded by the hearsay rule, even though the declarant is available as a witness," including a "statement that is being offered against a party and is . . . (B) a statement that the party has adopted or approved . . . ." Conn. Code. Evid. § 8-3 (1). The commentary to § 8-3 (1) (B) provides that "the common-law hearsay exception for tacit admissions, under which silence or a failure to respond to another person's statement may constitute an admission . . . *Obermeier* v. *Nielsen*, 158 Conn. 8, 11–12, 255 A.2d 819 (1969); is carried forward in Section 8-3 (1) (B)." (Citation omitted.) Conn. Code Evid. § 8-3 (1) (B), commentary.

In *Obermeier*, our Supreme Court stated that "[t]he failure of one person to contradict or reply to the statement of another person made in his presence and hearing may amount to an admission by adoption of the other's assertion, providing the person remaining silent actually heard and understood the statement and was not disabled or prevented from replying, and the statement, under the circumstances made, was such as would naturally call for an answer. Under such circumstances evidence of the making of the statement and the silence of the person in whose presence it was made is admissible under the exception to the hearsay rule raised with respect to admissions . . . . This is known as the doctrine of tacit admissions . . . ." (Internal quotation marks omitted.) *Obermeier* v. *Nielsen*, supra, 158 Conn. 11–12. The plaintiff, as the proponent of the tacit admission, had to establish that (1) the defendant

comprehended the statement made, (2) the defendant had the opportunity to speak, (3) the circumstances naturally called for a reply from the defendant and (4) the defendant remained silent. Id., 12; see also *Roberto v. Honeywell, Inc.*, 43 Conn. App. 161, 165, 681 A.2d 1011, cert. denied, 239 Conn. 941, 684 A.2d 712 (1996).

In support of her claim that the circumstances did not naturally call for a reply, the defendant argues that Hahn's statement was made "in a meeting among long-standing friends who gathered around the holiday season and whose first concern was not the fault of any person but the injury that the plaintiff incurred. That is why under the circumstances . . . the first natural response of the defendant . . . was to inquire about [the plaintiff's] injury, not to reply to some cryptic, vague and ambiguous utterance by [Hahn]."

We cannot conclude that it was unreasonable for the court to determine that the circumstances naturally called for a reply from the defendant. The plaintiff testified that the statement by Hahn was given in the context of a conversation about the dog bite. Also, immediately preceding the statement by Hahn, the defendant had responded to the plaintiff's assertion that the dog had bitten her by saying to the plaintiff, "What do you mean Sam bit you? What did you do to him?" The court reasonably could have concluded that this statement by the defendant indicated disbelief on the part of the defendant and that Hahn's statement, which referred to an instance in which the dog previously had bitten the defendant, was meant to address this disbelief.

Contrary to the defendant's argument, the fact that Hahn's statement was made during a conversation among friends, rather than adversaries, is not dispositive of whether the circumstances naturally called for a reply. The court reasonably could have concluded that regardless of the relationship between the people

present when the statement was made, an owner, after hearing a statement about how she herself had been bitten by her dog, reasonably would be expected to respond to such a statement. Furthermore, the court reasonably could have determined that under the circumstances of the present case, a dog owner, such as the defendant, either would deny that such an occurrence had occurred or, at the very least, would offer an explanation for the incident so as to distinguish it from the present situation. After reviewing the record, we cannot say that the court abused its discretion in determining that the circumstances surrounding Hahn's statement naturally called for a reply. Accordingly, we conclude that the court did not abuse its discretion in admitting the statement and the defendant's silence under the tacit admission exception to the hearsay rule.

## II

The defendant next claims that the court's instruction to the jury regarding "dangerous" or "potentially dangerous" propensities was improper. Specifically, the defendant argues that the court should have instructed the jury on "vicious" propensities, as the defendant had requested in her proposed charge, rather than on "dangerous" or "potentially dangerous" propensities.[4] The defendant contends that the court's instruction "lowered the standard of care and misled the jury."[5] We are not persuaded.

[4] This claim is preserved for our review. The defendant filed a request to charge, and, following the court's charge, the defendant took an exception, in which she argued that the court should have referred to "vicious" propensities.

[5] The defendant also appears to claim that the court submitted improper interrogatories to the jury because the court failed to use the defendant's proposed interrogatories. Because the defendant has failed to brief this claim adequately, we decline to afford it review. "[W]e are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failing to brief the issue properly. . . . Where the parties cite no law and provide no analysis of their claims, we do not review such claims." (Citation omitted; internal

As a preliminary matter, we identify the applicable standard of review and set forth the legal principles that govern our resolution of the defendant's instructional claim. "A challenge to the validity of jury instructions presents a question of law over which this court has plenary review." *Pickering* v. *Rankin-Carle*, 103 Conn. App. 11, 14, 926 A.2d 1065 (2007). "When reviewing [a] challenged jury instruction . . . we must adhere to the well settled rule that a charge to the jury is to be considered in its entirety, read as a whole, and judged by its total effect rather than by its individual component parts. . . . [T]he test of a court's charge is not whether it is as accurate upon legal principles as the opinions of a court of last resort but whether it fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . As long as [the instructions] are correct in law, adapted to the issues and sufficient for the guidance of the jury . . . we will not view the instructions as improper." (Internal quotation marks omitted.) *Vertex, Inc.* v. *Waterbury*, 278 Conn. 557, 572–73, 898 A.2d 178 (2006).

In its charge to the jury, the court, in adapting the law to the case in question, stated that "[u]nder our law, the owner of a dog may be held liable for harm caused by the pet if the owner knows or should have known that the dog had *dangerous or potentially dangerous propensities*. Liability in such situation is based upon a finding that the dog owner failed to act upon knowledge of the propensity, which would constitute a breach of the duty of care by the owner to those coming into contact with . . . her dog." (Emphasis added.)

The defendant first argues that the court's usage of the word "dangerous," rather than "vicious," to describe

quotation marks omitted.) *Turner* v. *American Car Rental, Inc.*, 92 Conn. App. 123, 130–31, 884 A.2d 7 (2005).

the propensities of the dog was improper. We conclude that the court's charge on "dangerous" propensities conveyed the same general principle as that requested by the defendant, namely, the characteristic of a dog that demonstrates a tendency or inclination to cause harm to a person. This principle also was explicated in the court's discussion of examples of the type of evidence that may be sufficient to establish a dangerous propensity. Specifically, the court charged that "[e]vidence that the dog has bitten or attacked others or evidence of the owner's knowledge that the dog engaged in behaviors which would tend to indicate a propensity to bite or otherwise injure people may be sufficient to establish" that the dog had dangerous propensities.

Furthermore, we are not persuaded that there is a meaningful distinction between the words "vicious" and "dangerous" as used in the context of an action stemming from a dog bite, nor has the defendant explained what that distinction would be. A review of appellate decisions reveals that this court, as well as our Supreme Court, frequently has used words other than vicious when referring to a dog's propensities. See *Granniss* v. *Weber*, 107 Conn. 622, 625, 141 A. 877 (1928) ("[P]rincipal purpose and effect [of the dog bite statute] was to abrogate the common-law doctrine of scienter as applied to damage by dogs to persons and property, so that liability of the owner or keeper became no longer dependent upon his knowledge of the dog's *ferocity or mischievous propensity*; literally construed the statute would impose an obligation on him to pay for any and all damage the dog may do of its own volition. It 'extends the liability of the owner of a dog beyond that existing at common law.' " [Emphasis added.]); see also *Auster* v. *Norwalk United Methodist Church*, 286 Conn. 152, 160 n.10, 943 A.2d 391 (2008) (same); *Stokes* v. *Lyddy*, 75 Conn. App. 252, 266, 815 A.2d 263 (2003) (same);

*Murphy* v. *Buonato*, 42 Conn. App. 239, 253, 679 A.2d 411 (1996) (*O'Connell, J.*, dissenting) ("no indication in the present case that the plaintiff had such knowledge, i.e., scienter, of the *dangerous* propensities of the defendant's dog" [emphasis added]), aff'd, 241 Conn. 319, 696 A.2d 320 (1997); see generally 4 Am. Jur. 2d, Animals §§ 75–76 (2007); 3B C.J.S., Animals §§ 331–32, 334 (2003).

With respect to the defendant's claim that the court improperly charged on "potentially dangerous" propensities, we conclude that the court's use of the word "potentially" was not improper and was meant to distinguish between the different types of evidence that may be used to establish the vicious or dangerous propensity of the dog about which the owner was charged with having knowledge.

The court instructed the jury that for the defendant to be liable, the plaintiff had to prove, inter alia, that the defendant knew or reasonably should have known of the dog's dangerous or potentially dangerous propensities. In discussing this element of a common-law negligence action, the court stated that it could be established by evidence that the defendant had knowledge that the dog engaged in behaviors, other than biting or causing actual injury, that tended to indicate that the dog had a propensity to bite or otherwise to injure people. The court, in instructing the jury on this element, was explaining that other conduct on the part of a dog, in addition to the propensity to bite, could indicate a propensity, which likely or potentially could cause injury. This charge also was in accord with 3B C.J.S., supra, §§ 331–32, which similarly indicates that other propensities, besides the propensity to bite, can demonstrate the potential or the likelihood of a dog to cause injury, and, thus, the owner is charged with having knowledge of the dog's dangerous propensities. We conclude that the instructions, when read as a whole,

were adapted properly to the law and provided the jury with sufficient guidance. Accordingly, the defendant's claim fails.

## III

The defendant last claims that there was insufficient evidence to support the jury's verdict on the plaintiff's claim of negligence. Specifically, the defendant contends that the jury reasonably could not have concluded that the dog had vicious propensities or that the defendant was aware of those propensities. We do not agree.

We begin by setting forth the standard of review applicable to claims of insufficient evidence. Our Supreme Court has stated: "[I]t is not the function of this court to sit as the seventh juror when we review the sufficiency of the evidence . . . rather, we must determine, in the light most favorable to sustaining the verdict, whether the totality of the evidence, including reasonable inferences therefrom, supports the jury's verdict . . . . In making this determination, [t]he evidence must be given the most favorable construction in support of the verdict of which it is reasonably capable. . . . In other words, [i]f the jury could reasonably have reached its conclusion, the verdict must stand, even if this court disagrees with it." (Citations omitted; internal quotation marks omitted.) *Ormsby* v. *Frankel*, 255 Conn. 670, 692, 768 A.2d 441 (2001).

"Under the common law of this state, it has been held that liability for injuries committed by a vicious animal is grounded in negligence. See *Ford* v. *Squatrito*, 86 Conn. 710, 86 A. 579 (1913). It is the duty of the owner of such an animal, having knowledge of its vicious propensities, to give notice of the propensities or to restrain the animal, and that failure to do so is negligence that makes the owner liable for its consequences." *Stokes* v. *Lyddy*, supra, 75 Conn. App. 265–66. "[T]he plaintiff must prove that the dog had vicious

propensities and that the owner or keeper had knowledge, or the means of knowledge, of them." *Basney* v. *Klema*, 2 Conn. Cir. Ct. 538, 544, 203 A.2d 95 (1964).[6] A vicious propensity is any propensity on the part of a dog that is likely to cause injury under the circumstances. See 3B C.J.S. 410, supra, § 331.

To support her claim that the evidence was insufficient, the defendant contends that the evidence adduced at trial indicated only that the dog barked at strangers and was shy, skittish and nervous. The defendant further argues that the evidence was insufficient because the circumstances surrounding the prior dog bite incident were unknown. We disagree and conclude that the evidence presented at trial was sufficient to support the jury's determination that the defendant's dog had vicious or dangerous propensities and that the defendant was aware or reasonably should have been aware of those propensities.

Contrary to the defendant's arguments, the evidence was not insufficient and did not establish only that the dog was shy and skittish. Rather, the evidence demonstrated that the defendant's dog would become upset and growl when people leaned toward him. Indeed, the

---

[6] "Any propensity on the part of a dog, which is likely to cause injury under the circumstances . . . is a dangerous or vicious propensity, and a vicious propensity does not mean only the type of malignancy exhibited by a biting dog, that is, a propensity to attack human beings. . . . In order to charge the owner or keeper of a dog with knowledge or scienter of the animal's vicious propensity, the notice of the dog's propensity must be such as to put a prudent person on guard, and require him as an ordinarily prudent man to anticipate the injury. The crucial issue is whether the owner knows, or had reason to know, of the animal's dangerous propensities. . . . Although the fact that the owner or keeper knows that the dog has on a previous occasion attacked or bitten a person, or otherwise manifested its vicious propensity, may be sufficient to charge him with knowledge thereof, it is not necessary that there be a previous attack or bite in order to charge the owner or keeper with knowledge or notice of the vicious propensity, for he is bound to observe other manifestations short of actual injury, and he cannot disregard them . . . ." 3B C.J.S., supra, §§ 331–32.

defendant's testimony indicated that she knew that her dog would become upset when people hovered or leaned over him and also that her dog, who was afraid and distrustful of strangers, would bark at strangers. The defendant further testified that loud noises and sudden movements sometimes would upset her dog. Scanlon stated that the dog growled at her when she had reached down toward the dog at the airport. In addition, from the testimony of the plaintiff and Scanlon, the jury heard evidence relating to an incident in which the dog previously had bitten *the defendant*. Although the defendant testified at trial that her dog had never bitten her, the jury, as the trier of fact and the final judge of the credibility of witnesses, was free to disbelieve the defendant and to reject this testimony as self-serving. See *Birchard* v. *New Britain*, 103 Conn. App. 79, 89, 927 A.2d 985, cert. denied, 284 Conn. 920, 933 A.2d 721 (2007). After reviewing the record before us and considering the evidence in the light most favorable to sustaining the verdict, we conclude that the jury reasonably could have found as it did.

The judgment is affirmed.

In this opinion the other judges concurred.